WILLIAM P. BARR
Attorney General
ROBERT S. BREWER, JR.
United States Attorney
MICHAEL G. WHEAT, CBN 118598
JOSEPH J.M. ORABONA, CBN 223317
JANAKI S. GANDHI, CBN 272246
COLIN M. MCDONALD, CBN 286561
Special Attorneys to the Attorney General
United States Attorney's Office
880 Front Street, Room 6293
San Diego, CA 92101
619-546-8437/7951/8817/9144
michael.wheat@usdoj.gov

Attorneys for the United States of America

# UNITED STATES DISTRICT COURT
## DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KATHERINE P. KEALOHA,<br>LOUIS M. KEALOHA,<br>DEREK WAYNE HAHN,<br>MINH HUNG NGUYEN,<br><br>Defendant. | CR NO. 17-00582 JMS-WRP<br>CR NO. 18-00068 JMS-WRP<br>CR NO. 19-00015 JMS-WRP<br><br>DECLARATION OF SUSAN BALLARD |

Comes now the UNITED STATES OF AMERICA, by and through its

counsel, William P. Barr, United States Attorney General, Robert S. Brewer, Jr.,

United States Attorney, Michael G. Wheat, Joseph J.M. Orabona, Janaki S. Gandhi,

and Colin M. McDonald, Special Attorneys to the Attorney General, and hereby files

the attached declaration of Susan Ballard, Chief of the Honolulu Police Department.

Exhibit 1. As the United States will set forth in its sentencing memoranda, Chief Ballard's declaration supports the United States' recommended color-of-law enhancement under USSG § 2H1.1 for Defendants Katherine Kealoha and Louis Kealoha, recommended upward departure under USSG § 5K2.0 for Defendants Derek Wayne Hahn and Minh Hung Nguyen, and the United States' analysis of the relevant sentencing factors under 18 U.S.C. § 3553(a).

Dated: March 10, 2020                Respectfully submitted,

                                     WILLIAM P. BARR
                                     United States Attorney General
                                     ROBERT S. BREWER, JR.
                                     United States Attorney

                                     */s/ Colin M. McDonald*
                                     MICHAEL G. WHEAT
                                     JOSEPH J.M. ORABONA
                                     JANAKI S. GANDHI
                                     COLIN M. MCDONALD
                                     Special Attorneys to the Attorney General

# UNITED STATES DISTRICT COURT
## DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR NO. 17-00582 JMS-WRP |
| | CR NO. 18-00068 JMS-WRP |
| Plaintiff, | CR NO. 19-00015 JMS-WRP |
| v. | |
| | CERTIFICATE OF SERVICE |
| KATHERINE P. KEALOHA, et al., | |
| Defendant. | |

IT IS HEREBY CERTIFIED that:

I, Colin M. McDonald, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, CA 92101-8893.

I am not a party to the above-entitled action. I have caused service of the foregoing on all parties in this case by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 10, 2020

*/s/ Colin M. McDonald*
COLIN M. MCDONALD
Special Attorney to the Attorney General

EXHIBIT 1

DECLARATION OF SUSAN BALLARD

## DECLARATION OF SUSAN BALLARD

1.       My name is Susan Ballard, and I have been asked to provide this
declaration for the sentencing of this matter.

2.       I am currently the Chief of Police of the Honolulu Police Department
(the "Department"), and have held that position since November 1, 2017. I first
joined the Department in 1985 and have been employed by the Department since
that time. Over the past thirty-five years, I have served in various capacities within
the Department, including serving as commander of District 4 and District 5 patrol
districts, the Finance Division, the Training Division, the Research and
Development Division, the Informational Resources Section, and the Central
Receiving Division.

3.       During the course of my experience with the Department, I have
become familiar with all aspects of the Department's operations, including staffing
needs and resource allocation, which plays a significant role in effectively protecting
the communities of Oahu.

4.       The Department's jurisdiction encompasses the entire island of Oahu,
approximately 596 square miles. As of approximately April 2019, the Department
had approximately 1,889 sworn officers. The island of Oahu is divided into eight
patrol districts. District 6 encompasses the Waikiki peninsula, approximately 1.5
square miles bordered by the Ala Wai Canal, Diamond Head, and the Pacific Ocean;
District 7, spanning approximately 40 square miles, encompasses East Honolulu,

including the Kahala neighborhood and the residence located at 1018 Kealaolu Avenue.

5.     Because of the high concentration of tourist activity, large events, and other factors, District 6 in Waikiki presents significant law enforcement challenges for the Department. The crime density per square mile in District 6 exceeds all other districts. For example, in the year 2013, approximately 3,882 serious offenses were committed in District 6. By comparison, approximately 3,829 serious offenses were committed in District 7 (which is approximately 38.5 square miles larger than District 6). In order to effectively combat the challenges posed there, District 6 must be adequately staffed at all times.

6.     The District 6 Crime Reduction Unit (CRU) concentrates on eliminating drugs, prostitution, and violent crimes within District 6. Because of the importance of the tourist industry to the local economy, there are two (2) CRU units assigned to District 6, one for days and one for nights.

7.     For purposes of this affidavit, I have reviewed the trial testimony of Sgt. Daniel Sellers, formerly of the Department's Criminal Intelligence Unit (CIU). I understand that during his testimony, Sgt. Sellers stated that between 20 and 30 Department officers conducted 24-hour surveillance on Gerard Puana beginning June 25, 2013 and ending June 29, 2013. That included "close to 15 officers" from District 6 CRU; the remainder were officers assigned to CIU.

*Declaration of Susan Ballard*                                   *17CR0582-JMS-WRP*

8.      It is my understanding that Gerard Puana resided in District 7, and that surveillance of Mr. Puana began after Katherine Kealoha alleged that Mr. Puana stole a mailbox in District 7.

9.      It is not uncommon for officers in one district to assist officers in another district. For instance, the Department may require additional personnel from an adjacent district to assist with a developing situation presenting a heightened public safety risk. The prolonged surveillance of Gerard Puana, as described by Sgt. Sellers, is not common. On the contrary, during my thirty-four years with the Department, I have never seen or heard of another non-violent theft offense, such as an alleged mailbox theft, divert as many Department resources as occurred in the surveillance of Mr. Puana. The reason is that such prolonged surveillance, significantly disrupts the operations of the Department. For example,

a.      The commitment of CRU officers from a single district at one time significantly hinders the unit's ability to carry out its routine duties as well as conduct criminal investigations affecting the district. This particular situation is aggravated by the fact that District 6 is vital to the economic health of the entire state, which is why two CRU units are allocated there. If CRU officers are diverted out of district, they are unable to work on cases directly affecting this vital district and are unable to provide the necessary support to district patrol units. While the district can function without its CRU officers on a temporary basis, prolonged

3

assignments will eventually take a significant toll on the resources and morale of the district.

   b.   Cases grow cold and crime goes unanswered without active investigation especially when they involve a transient population like tourists. Time is often of the essence when it comes to investigating cases involving tourists as witnesses/victims as they are only available to the officers for a short period. Seemingly routine and common processes such as interviewing witnesses/victims or conducting line ups becomes infinitely more difficult once the witness/victim leaves the island. Again, without CRU units available to help investigate and facilitate interviews and line ups, criminal investigations are covered by a much smaller group of officers who will eventually struggle to keep up with the caseload if the out of district assignment is prolonged.

   c.   Prolonged surveillance conducted out of district also causes organizational chaos if commanders are not kept informed and district personnel are not deconflicted. While diverting a CRU team to assist another district is not unheard of, it is usually done in a coordinated effort with both district commanders and necessary staff aware of the operation. This is particularly critical when CRU officers (who are attired in plain clothes) from one district are conducting a covert operation in another district.

   d.   This specific instance of prolonged surveillance was also particularly disruptive because it significantly damaged the reputation of

*Declaration of Susan Ballard*                                    *17CR0582-JMS-WRP*

department. Surveillance such as this would never have been undertaken for a solitary non-violent theft offense especially without any other evidence or intelligence elevating it in severity. For example, there was no evidence of this incident being part of a neighborhood crime spree or organized crime ring or anything else to indicate that this one event was worthy of all the resources that were expended. The commitment of such resources for a seemingly minor offense was impossible to justify, not just within the HPD, but to other law enforcement agencies and major city police departments. It caused significant embarrassment to the department locally as well as nationally.

10.    Additionally, while it is not possible to calculate the exact numbers, the surveillance of Mr. Puana resulted in a significant loss of resources to the Department.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my belief.

Executed on this **12** day of February, 2020.

SUSAN BALLARD

*Declaration of Susan Ballard*                    *17CR0582-JMS-WRP*