WILLIAM P. BARR
Attorney General
ROBERT S. BREWER, JR.
United States Attorney
MICHAEL G. WHEAT, CBN 118598
JOSEPH J.M. ORABONA, CBN 223317
JANAKI S. GANDHI, CBN 272246
COLIN M. MCDONALD, CBN 286561
Special Attorneys to the Attorney General
United States Attorney's Office
880 Front Street, Room 6293
San Diego, CA 92101
619-546-8437/7951/8817/9144
michael.wheat@usdoj.gov

Attorneys for the United States of America

## UNITED STATES DISTRICT COURT
### DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>        v.<br><br>LOUIS M. KEALOHA (2),<br><br>                    Defendant. | CR. NO. 17-00582-2 JMS-WRP<br>CR. NO. 18-00068-2 JMS-WRP<br><br>UNITED STATES' SENTENCING<br>MEMORANDUM<br>(REDACTED)<br><br>Date:   March 17, 2020<br>Time:   1:30 p.m.<br>Judge:  Hon. J. Michael Seabright |

## UNITED STATES' SENTENCING MEMORANDUM

"Integrity. Respect. Fairness."  These values are inscribed on every marked

Honolulu Police unit.  These are the values of the honest men and women of the

Honolulu Police Department ("HPD").  However, Defendant Louis M. Kealoha, the

former HPD police chief, tarnished these values by abusing his power and engaging in dishonest deeds for the Kealohas' personal and financial gain.

Louis Kealoha conspired with others to frame Gerard Puana for a crime he did not commit.  He then actively schemed to cover up his corruption to protect the Kealohas' false public image and maintain their affluent stature in the community. Louis Kealoha's misconduct spanned years, and included falsely identifying Gerard Puana as the suspect who stole the mailbox, coordinating at pivotal times by telephone with the co-conspirators to report the stolen mailbox hours after Louis Kealoha allegedly discovered it was missing, falsely identifying Gerard Puana as a burglary suspect in a false police report, ordering the investigation into Gerard Puana be conducted by homicide detectives, and most importantly, giving false testimony during the criminal trial of Gerard Puana.  Louis Kealoha's false testimony during Gerard Puana's trial was intended to lead to the wrongful conviction of an innocent man.  When the case against Gerard Puana was dismissed, Louis Kealoha continued his misconduct by publicly affirming the false narrative that Gerard Puana had stolen the mailbox and that nothing was abnormal about HPD's investigation. Louis Kealoha furthered this false narrative during the ethics investigation into the Kealohas.  When corruption of this sort exists at the highest level of the police department, it destroys the reputation and integrity of the honest and hardworking members of the department and it creates an almost insurmountable obstacle to

regaining the public's trust.  Louis Kealoha's extraordinary abuse of power, greed, and manipulation are the most serious forms of police corruption.  For that, the sentence imposed for his crimes should be sufficient to begin restoring the public's trust in law enforcement.

The attempt to frame Gerard Puana is not the end of Louis Kealoha's crime. While their affluent lifestyle was the cover story for a local magazine, the image was just a facade manufactured by repeated lies to the bank.  The Kealoha's greatest liability was the certainty that their bank fraud was too clever to be detected – false statements, fabricated police reports, and identity theft.  Louis Kealoha knew the scope and structure of the bank fraud, assisted in devising the scheme to defraud the banks, falsely certified that Katherine Kealoha owned monies in trust accounts that he knew did not belong to her, and exercised his decision-making authority by signing the loan documents. The Kealohas benefited substantially from the bank fraud.  For that, Louis Kealoha's sentence must reflect the seriousness of the crime and address the impact on the community's financial institutions.

Pursuant to the terms of the parties' agreements, the advisory Guideline range as determined by the United States for Louis Kealoha's corruption, which was undoubtedly performed under color of law, and bank fraud, is between 70 and 87 months. When the mitigating and aggravating sentencing factors set forth in 18 U.S.C. § 3553(a) are balanced, the United States recommends a total sentence of

87 months in prison, a maximum supervised release term of 5 years, an order of criminal forfeiture, and an order of restitution as set forth in the agreements.

Lastly, the Court should remand Louis Kealoha into custody because no further delay is warranted as he has waived appeal and has been on bond pending sentencing for nearly nine months.

I

FACTUAL BACKGROUND

█████████████████████████████████████████████████

██████████████████████████████████████ Louis Kealoha admitted these facts as true in his Sentencing Agreement in CR No. 17-00582 JMS-WRP (ECF 928), in his Plea Agreement in CR No. 18-00068 JMS-WRP (ECF 204), and during his plea colloquy on October 22, 2019. ███████████ Many of these facts were proven during the lengthy trial in this case, and are well-known to the Court. Therefore, the United States need not repeat them here.

//

//

//

//

―――――――――――――――

█ ██████████████████████████████████████████████
██████████████████████████████████████████
███████████████████████████

II

THE ADVISORY GUIDELINES[2]

A.     THE CORRUPTION CONVICTIONS

The counts of conviction in CR No. 17-00582 JMS-WRP are grouped for Guidelines purposes ("Group 1") because they involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.  USSG § 3D1.2(b).  Pursuant to the Sentencing Agreement, the parties agree that the base offense level for Group 1 is 19. ECF 204.

For Group 1, there are three specific offense characteristics that apply.  First, pursuant to USSG § 2H1.1(b)(1)(B), six levels are added because the offense was committed under color of law. Second, pursuant to USSG § 3A1.1(b)(1), two levels are added because Florence and Gerard Puana were a vulnerable victims based upon the parties' factual stipulations and relevant conduct.  Third, pursuant to USSG § 3B1.1, two levels should be added because Louis Kealoha had an aggravating role.

//

//

---

[2]     The United States recognizes that the Court disagreed with its position that the parties agreed to the application of USSG § 2H1.1.  As stated at the December 16, 2019, hearing, the United States will recommend a sentence based upon the advisory Guidelines set forth in the Sentencing Agreement and Plea Agreement in CR Nos. 17-00582 JMS-WRP and 18-00068 JMS-WRP, respectively.  Therefore, the United States provides its bases for such advisory Guidelines and recommendation.

1.    <u>Crimes Committed Under Color of Law – § 2H1.1(b)(1)(B)</u>

"Under color of law" generally means that a government agent acts under official authority. *See United States v. Classic*, 313 U.S. 299, 326 (1941) ("Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law."). "The color-of-law adjustment punishes abuse of authority, either actual or apparent, by an officer of the state." *United States v. Volpe*, 224 F.2d 72, 76 (2d Cir. 2000). "Acts of officers who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it." *Screws v. United States*, 325 U.S. 91, 111 (1945); *see also id.* ("If, as suggested, the statute was designed to embrace only action which the State in fact authorized, the words 'under color of any law' were hardly apt words to express the idea."). Moreover, "[p]rivate persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of the statute. To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents." *United States v. Price*, 383 U.S. 787, 794 (1966).

When the chief of police and his co-conspirators intend to wrongfully accuse an innocent man and frame him for a crime he did not commit, leading to false imprisonment and prosecution, the "color of law" enhancement applies. Using the

"secret police" unit that reported directly to him, Louis Kealoha abused his power and authority by falsely identifying Gerard Puana as a criminal suspect, and thereafter, permitting his officers (*i.e.,* Derek Hahn, Minh-Hung "Bobby" Nguyen, Gordon Shiarishi, Danny Sellers, and Niall Silva) to conduct illegal searches and seizures of Gerard Puana. Louis Kealoha was also directly involved in creating and causing others to create false police reports involving the victim, Gerard Puana. Louis Kealoha, with the perceived stature and credibility as the chief of police, knowingly provided perjured testimony that Gerard Puana was the suspect who stole the mailbox. There is absolutely no doubt that what happened to Gerard Puana could not have occurred absent the authority bestowed upon Louis Kealoha as chief of police.

Lastly, Louis Kealoha acted under color of law by causing a significant disruption of government function by allowing vast amount of resources from his "secret police" unit (CIU) and officers in other districts to surveil and detain Gerard Puana.[3] Thus, the six level upward adjustment for the offense committed *under the color of law* applies to Louis Kealoha. This brings the offense level to 25.[4]

---

[3]      The United States incorporates by reference herein the arguments and cases addressing the significant disruption of government function because they are applicable to the color of law adjustment set forth here. *See* ECF 916. In addition, the Declaration of Susan Ballard, Chief of HPD, also sets forth detail supporting the color of law adjustment as to Louis Kealoha. *See* Ballard Declaration (ECF 969).

[4]      The commentary in Note 5 to USSG § 2H1.1 provides that when the six level upward adjustment for "color of law" is applied, then "do not apply § 3B1.3 (Abuse

2.      <u>The Vulnerable Victim – § 3A1.1(b)(1)</u>

The United States incorporates by reference herein the analysis of the vulnerable victim enhancement pursuant to USSG § 3A1.1(b)(1) ████████████ ███████████████████████████████████████ Gerard Puana and Florence Puana, relatives of Louis Kealoha, were the quintessential vulnerable victims.  Louis Kealoha's advisory Guidelines should be increased by two levels under USSG § 3A1.1(b)(1).  This brings the offense level to 27.

3.      <u>Aggravating Role – § 3B1.1(c)</u>

Where the defendant was an organizer, leader, manager, or supervisor in any criminal activity, then pursuant to USSG § 3B1.1(c), a two level upward adjustment is applied.  To determine whether a defendant is an organizer or leader, as opposed to a manager or supervisor, the Court considers the following factors:

> [T]he exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

---

of Position of Trust or Use of Special Skill)."  Moreover, the United States contends that given the upward adjustment is six levels, it includes conduct set forth in USSG § 5K2.7 for significant disruption of government function. Thus, the United States does not recommend any adjustments for abuse of position of trust or significant disruption of government function in Louis Kealoha's Sentencing Agreement in CR No. 17-00582 JMS-WRP or Plea Agreement in CR No. 18-00068 JMS-WRP.

*See* USSG § 3B1.1 app. n.4 (2018).   More than one person can qualify as an organizer, leader, manager or supervisor in the criminal activity. *See* USSG § 3B1.1 app. n.4 (2018); *see also United States v. Barnes*, 993 F.2d 680, 685 (1993).

The application notes to § 3B1.1(c) provide that a defendant must have overseen "one or more other participants" to qualify for the upward adjustment, *see* § 3B1.1 cmt. 2, and define "participant" as "a person who is criminally responsible for the commission of the offense, but need not have been convicted." *Id.*   The Ninth Circuit has held that the two-level enhancement may be imposed where "there is evidence that the defendant exercised some control over others involved in the commission of the offense or was responsible for organizing others for the purpose of carrying out the crime." *United States v. Smith*, 719 F.3d 1120, 1126 (9th Cir. 2013) (citing *United States v. Whitney*, 673 F.3d 965, 975 (9th Cir. 2012)).

In this case, the evidence presented at trial and the admissions by Louis Kealoha establish that he was a manager and supervisor in the criminal activity.   As the chief of police, Louis Kealoha led a "secret" unit known as CIU, where the officers (and members of the conspiracy, *i.e.,* Derek Hahn and Bobby Nguyen) reported ultimately to Louis Kealoha.   Moreover, Louis Kealoha selected, appointed, and approved the police officers to CIU – namely, his co-conspirators in the criminal activity, Derek Hahn and Bobby Nguyen (*i.e.,* his relative and the only "footman" in the secret police).   During the conspiracy, Louis Kealoha communicated directly

9

by phone with Derek Hahn, Bobby Nguyen, and others at critical points following the alleged theft of the mailbox.  For instance, immediately after Gerard Puana was arrested, Louis Kealoha made several phone calls to Derek Hahn. ECF 970.

Louis Kealoha directed the actions of other persons in the criminal activity, that is, Katherine Kealoha, Derek Hahn and Bobby Nguyen.  For example, as proven at trial, Derek Hahn contacted John McCarthy by phone approximately one year after Katherine Kealoha told McCarthy that Louis Kealoha did not want McCarthy to investigate the alleged elder abuse by Gerard Puana against Florence Puana.  Hahn told McCarthy that Louis Kealoha wanted to know the status of the elder abuse investigation.  This phone contact was corroborated by an email, obtained from Louis Kealoha's laptop, that was sent by Katherine Kealoha to "DeeDee" (Derek Hahn) and Louis Kealoha on the same evening that Hahn called McCarthy.  The timing of this inquiry was suspect because it occurred late in the evening the day before Katherine Kealoha was scheduled to be deposed for a second time in the civil matter.  However, Louis Kealoha was not a named defendant in the civil matter, and yet, he was keeping his hand in the  police activity involving Gerard Puana and Florence Puana.  This evidence  substantiates that Louis Kealoha was supervising and managing the actions of other persons involved in the conspiracy.  *See United States v. Fuentes*, 954 F.2d 151, 153 (3d Cir. 1992) (holding that the two-level enhancement under USSG § 3B1.1(c) applies when the defendant supervises or

manages the actions of another individual in the criminal enterprise).  Thus, the two level upward adjustment for the aggravating role under USSG § 3B1.1(c) applies to Louis Kealoha.  This brings the offense level to 29.

B.     THE BANK FRAUD

The count of conviction for bank fraud is a separate group ("Group 2").  For Group 2, the base offense level pursuant to USSG § 2B1.1 is 7.  The actual or intended loss in this case is zero because the loans were rolled over and paid in full resulting in neither an actual nor intended loss.  Moreover, the property was sold for a gain – $63,476.97.  Pursuant to USSG § 2B1.1(b)(1)(A) there is no adjustment for loss.  The parties agreed, and the facts set forth in the PSR, establish a substantial financial hardship pursuant to USSG § 2B1.1(b)(2)(A), resulting in an upward adjustment of two levels.  Lastly, the Kealohas obtained more than $1 million from a financial institution, and therefore, pursuant to USSG § 2B1.1(b)(17)(A), the parties agreed to apply a two level upward adjustment.

This bring the offense level to 11.

C.     COMBINED OFFENSE LEVEL

Under the grouping provisions of the advisory Guidelines, the highest base offense level is 29.  *See* USSG § 3D1.1.  There is no increase for multiple offenses because the offense levels for Group 1 (29) and Group 2 (11) are more than nine levels apart.  *See* USSG § 3D1.4.

Louis Kealoha entered into a Sentencing Agreement and Plea Agreement in CR No. 17-00582 JMS-WRP and CR No. 18-00068 JMS-WRP.  Louis Kealoha entered a guilty plea to bank fraud after sustaining his convictions for corruption. Therefore, the United States recommends a two level downward adjustment for acceptance of responsibility.  This bring the combined offense level to 27.

Louis Kealoha has zero criminal history points and is placed in Criminal History Category I.  At a level 27, and Criminal History Category I, the advisory Guideline range is 70 to 87 months.  With this range in mind, the United States addresses the sentencing factors set forth in 18 U.S.C. § 3553(a).

III

FACTORS UNDER 18 U.S.C. § 3553(a)

Section 3553(a) requires that the Court properly consider, among other factors: (1) the nature and circumstances of the offense; (2) the personal history and characteristics of the defendant; (3) the need to reflect the seriousness of the crimes, to promote respect for the law, and to provide just punishment for the offense; (4) to afford adequate deterrence to criminal conduct; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to the victims.

A.    NATURE AND CIRCUMSTANCES OF THE OFFENSES – § 3553(a)(1)

By jury verdict, Louis Kealoha was convicted of the crimes of conspiracy and obstruction of justice involving the intended wrongful conviction of an innocent

man.  The conspiracy has a maximum of 5 years in prison.  Each obstruction count has a maximum of 20 years in prison.  Each count has a maximum fine of $250,000 and a term of supervised release of 3 years per count.  Given these maximum penalties, the nature and circumstances of these offenses are serious.  Louis Kealoha stained the public image of the HPD by his criminal conduct.  Acting under the color of law to fuel a thirst for power and greed demands a significant sentence.  Louis Kealoha's role in supervising and managing his co-conspirators in the "secret police" make his offenses aggravating in nature.

By guilty plea, Louis Kealoha was convicted of bank fraud.  This count carries a maximum sentence of 30 years in prison, a fine of up to $1 million, a term of supervised release of 5 years, forfeiture, and restitution.  Given these maximum penalties, the nature and circumstances of the bank fraud as admitted by Louis Kealoha are serious.

The nature and circumstances of the offenses in both cases supports the sentence recommended by the United States.

B.     HISTORY AND CHARACTERISTICS – § 3553(a)(1)

███████████████████████████████████████████

██████      The United States notes that Louis Kealoha's crimes derived primarily from his abuse of power and greed.  He was an extremely educated man, with an

13

associate's degree in liberal arts, bachelor of science in occupational education, masters of science in criminal justice, and doctor of education. ███████

### C. NEED TO REFLECT THE SERIOUSNESS OF THE CRIMES, PROMOTE RESPECT FOR THE LAW, AND PROVIDE JUST PUNISHMENT – § 3553(a)(2)(A)

A substantial sentence is necessary to adequately reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offenses here. The public's faith in the criminal justice system depends on the knowledge that everyone is playing by the rules. While many police departments and officers make concerted efforts to operate within the rules, police corruption persists.

That corruption existed at the highest levels of the criminal justice system in this case – the chief of police (Louis Kealoha), a specialized "secret police" unit (Derek Hahn and Bobby Nguyen), and the deputy prosecutor (Katherine Kealoha). Louis Kealoha's criminal conduct not only damaged the public's trust in our criminal justice system, but also the integrity, fairness, and respect for the honest and hardworking members of HPD. *See, e.g.,* Ballard Declaration ¶ 9 (ECF 969). "An officer who causes people to question the integrity and impartiality of law enforcement undermines the rule of law and disrupts the functioning of all aspects of law enforcement in both the executive and judicial branches of government. Confidence in our legal system is undermined when those who are charged with enforcing the law choose to break the law instead." *United States v. Walker*, 21 F.

Supp. 2d 1288, 1293 (N.D. Okla. 1997); *see also United States v. Spano*, 411 F. Supp. 2d 923, 940 (N.D. Ill. 2006) ("Public corruption demoralizes and unfairly stigmatizes the dedicated work of honest public servants").

A sentence of 87 months in prison for Louis Kealoha addresses the need to adequately reflect the seriousness of the offenses, promote respect for the law, and provide just punishment for the offenses.

    D.    <u>NEED TO AFFORD ADEQUATE DETERRENCE – § 3553(a)(2)(B)</u>

A significant sentence is necessary to deter law enforcement officers from engaging in criminal activity like that committed by Louis Kealoha. Crimes by law enforcement are particularly difficult to expose and prosecute. Accordingly, this is an area of crime that requires robust deterrence. *See, e.g., United States v. Hooper*, 566 F. App'x 771, 773 (11th Cir. 2014) (unpublished) (general deterrence is "especially compelling in the context of officials abusing their power"); *Spano*, 411 F. Supp. 2d 923, 940 (N.D. Ill.) ("Unlike some criminal justice issues, the crime of public corruption can be deterred by significant penalties that hold all offenders properly accountable."). A low sentence will fail to adequately deter this type of serious and difficult-to-detect criminal conduct.

"[D]eterrence occurs where a potential offender will commit a crime only if the benefits exceed the expected sanction." *United States v. Harder*, 144 F. Supp.3d 1233, 1240 and n.5 (D. Or. 2015) (citing Peter J. Henning, *Is Deterrence Relevant*

*in Sentencing White-Collar Defendants?*, 61 Wayne L. Rev. 27, 40 (2015)).  "The greater the perceived certainty, severity, and swiftness of punishment, the lower the crime rate will be." *Harder*, 144 F. Supp.3d at 1240 and n.6 (quotation marks and citation omitted).  "It is also very difficult to predict deterrence because different thought processes are at play in motivating crime." *Id.*

When considering deterrence – both general and specific – the Court should consider whether a law enforcement officer calculates the risk of committing the crime against the potential sentence he/she faces as a "white-collar" criminal.  A sentence for conduct as egregious as that committed by Louis Kealoha, the chief of police, must provide as little incentive for others such that they think twice before engaging in similar conduct.  The message of a lengthy prison sentence and meaningful period of incarceration in a federal penitentiary would alert would-be-corrupt-officers that they stand to lose not only their liberty but a great deal of their livelihood.  In this case, a total sentence of 87 months for Louis Kealoha provides the necessary level of general and specific deterrence.

E.      THE KINDS OF SENTENCES AVAILABLE – § 3553(a)(3)

The United States is recommending a sentence within its advisory Guideline range as calculated pursuant to the agreements in both cases.  In fashioning an appropriate prison sentence and balancing the substantial number of aggravating factors against the few mitigating factors in this case, the United States propounds

16

that a total sentence of 87 months on all counts of conviction is sufficient but not greater than necessary for Louis Kealoha.

  F. <u>AVOID UNWARRANTED SENTENCING DISPARITIES – § 3553(a)(6)</u>

  Section 3553(a)(6) requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). The United States is unaware of any case involving similar conduct as that present here. In this regard, the Guidelines themselves serve as a bulwark against sentencing disparity. *See United States v. Hunt*, 459 F.3d 1180, 1184 (11th Cir. 2006) ("The Guidelines . . . are an indispensable tool in helping courts achieve Congress's mandate to consider 'the need to avoid unwarranted sentence disparities' among similarly situated defendants."); *United States v. Smith*, 445 F.3d 1, 7 (1st Cir. 2006) (noting that "the guideline range . . . is the principal means of complying with" the goal of avoiding unwarranted sentencing disparity); *United States v. Guerrero-Velasquez*, 434 F.3d 1193, 1195 n.1 (9th Cir. 2006) (recognizing that guidelines "help to maintain uniformity in sentencing throughout the country").

  The United States' sentencing recommendations in this case properly balances the history, conduct, roles, and acceptance of responsibility of Louis Kealoha and results in no unwarranted sentencing disparities. *See, e.g., United States v. Winters*, 278 F. App'x 781, 783 (9th Cir. 2008) (unpublished) ("A necessary corollary of plea

bargaining is that defendants who go to trial may receive greater sentences than similarly situated defendants who do not."); *United States v. Winters*, 278 F. App'x 781, 783 (9th Cir. 2008) ("A sentencing reduction based on an individual's acceptance of responsibility and assistance to the prosecution does not create an 'unwarranted' disparity. The district court in this case clearly weighed the relative roles of each defendant."); *United States v. Perez-Pena*, 453 F.3d 236 (4th Cir. 2006) ("By comparing the sentences of defendants who helped the Government to those defendants who did not . . . is comparing apples and oranges."); *United States v. Ressam*, 679 F.3d 1069, 1086 (9th Cir. 2012) (en banc) (co-conspirators "presented very different circumstances" because one "did not participate in the plan to blow up LAX nearly to the extent that Ressam did," and the other pleaded guilty).

Louis Kealoha will likely make the same pattern of arguments to move the Court downward from the United States' recommended sentence by using his stature in the community and highlighting all of his good works to show that his behavior was simply out of the norm.  However, these are typical arguments of white-collar criminals.  The Court should not be persuaded that such arguments, when counterbalanced against all of the aggravating factors in this case, warrant a lesser sentence.  This Court has, like Judge Manero in *United States v. Fishman*, 631 F. Supp.2d 399 (S.D.N.Y. 2009), heard much of these same arguments from white-collar defendants:

In particular, Fishman's argument falls into a pattern advanced by a subset of the white collar criminal. This category encompasses a select class: distinguished, reputable, highly esteemed model citizens such as Fishman. The list of their achievements and virtues is long and impressive. At home, they are good family men and women, caring spouses, loving parents, loyal and reliable to friends. At work, they are looked up to as outstanding professionals and business partners. To their community's charities and public causes, they are generous patrons and sponsors. And as worshipers they are devout, often rising as leaders of the congregation.

Yet, for all their outward rectitude, these otherwise good people suffer a fatal flaw: they sometimes lead a double life. Somewhere at the core, in a distorted dimension of the soul, the public image they present is as false as the lies they tell to sustain the appearances of an exemplary life. And somehow, for reasons that always defy reason, they fall into crime, doing wrongful deeds that seem aberrational, selfish and greedy acts that, when caught, they claim are entirely out of character with their otherwise law-abiding lives.

Typically, these offenders appear at their sentencing well-represented and well-prepared, offering ample reasons why the Court should exercise exceptional discretion and show maximum leniency. A key aspect of the evidence proffered in mitigation consists of medical records and psychological evaluations attesting that the defendant's criminal conduct, so at odds with an upright character, was driven by some recently diagnosed mental disorder, or ungovernable impulse, other unknown inner or outer demon he could not conquer that made him do it. . . .

Compelling as it sounds on the surface, [this argument] fails in some essential ways. Fundamentally, it is flawed by what it omits. In particular, it makes no account of several other circumstances courts are instructed to weigh adequately in ordering a fitting sentence: to reflect the severity of the crime; to promote general respect for the law; to avoid unwarranted sentencing disparities; and to consider the impact of the crime not only on its immediate victims, but on the larger social order.

*Id.* at 399-401.  It is important for the Court to weigh these arguments made by white-collar criminals, but it is equally important to put them in perspective and measure these arguments against the arguments concerning the extent of the crimes they have committed, the impact on the victims who suffered substantial reputational and financial losses at the expense of Louis Kealoha's abuse of power and greed, and Louis Kealoha's personal motivations for committing such crimes.  Such an analysis in this case should lead the Court to conclude that a sentence of 87 months for Louis Kealoha is sufficient but not greater than necessary, and will avoid any of these unwarranted disparities.

G.      PROVIDE RESTITUTION TO THE VICTIMS

The parties have agreed to provide restitution to the victims in their Sentencing Agreement and Plea Agreement in each of the respective cases.

IV

SENTENCING RECOMMENDATIONS

A.      THE CUSTODIAL SENTENCE

Based on the terms of the Sentencing Agreement in CR No. 17-00582 JMS-WRP, the United States recommends the following custodial sentence:

- Count 1 – Conspiracy: **60 months** in prison (statutory maximum)
- Count 2 – Obstruction: **87 months** in prison (concurrent)
- Count 6 – Obstruction: **87 months** in prison (concurrent)
- Count 8 – Obstruction: **87 months** in prison (concurrent)

Based on the terms of the Plea Agreement in CR No. 18-00068 JMS-WRP, the United States recommends the following custodial sentence:

- Count 4 – Bank Fraud: **87 months** in prison (concurrent)

B.   <u>SUPERVISED RELEASE</u>

Based on the terms of the Sentencing Agreement in CR No. 17-00582 JMS-WRP, the United States recommends the following supervised release terms:

- Count 1 – Conspiracy: **3 years** supervised release
- Count 2 – Obstruction: **3 years** supervised release (concurrent)
- Count 6 – Obstruction: **3 years** supervised release (concurrent)
- Count 8 – Obstruction: **3 years** supervised release (concurrent)

Based on the terms of the Plea Agreement in CR No. 18-00068 JMS-WRP, the United States recommends the following supervised release term:

- Count 4 – Bank Fraud: **5 years** supervised release (concurrent)

C.   <u>RESTITUTION</u>

The United States will submit a separate proposed order for restitution in both cases.  Pursuant to the terms of the Sentencing Agreement in CR No. 17-00582 JMS-WRP, the United States recommends that Louis Kealoha pay restitution to the follow victims/victims' estates based upon the agreed-upon amounts:

- Victim – Gerard Puana: **$11,565.25**
- Victim – Florence Puana: **$60,863.49**

//

//

Pursuant to the terms of the Plea Agreement in CR No. 18-00068 JMS-WRP, the United States recommends that Louis Kealoha pay restitution to the follow victims based upon the agreed-upon amounts:

- Victim – Ransen Taito: **$81,384.91**
- Victim – Ariana Taito: **$83,884.91**

D.    Fines and Special Assessments

The United States does not recommend a fine to ensure that Louis Kealoha uses his financial resources to pay restitution to the victims of his offenses.

The United States recommends a special assessment of $100.00 per count.  In CR No. 17-00582 JMS-WRP, Louis Kealoha was convicted of four counts, which totals $400.00 in special assessments.  In CR No. 18-00068 JMS-WRP, Louis Kealoha was convicted of one count and must pay a $100.00 special assessment.

E.    CRIMINAL FORFEITURE

The United States has submitted a proposed order of criminal forfeiture based upon the agreements in both cases.

V

REMAND AT SENTENCING

When a defendant has been found guilty and sentenced to a term of imprisonment, detention is the rule, not the exception.  *See* 18 U.S.C. § 3143; *United States v. Abuhamra*, 389 F.3d 309, 319 (2d Cir. 2004) (Section 3143 establishes a presumption in favor of detention).  The Court "shall" order the defendant detained

22

unless the defendant can establish: (1) by clear and convincing evidence that he is not a flight risk or danger to the community and (2) that the appeal is not for purpose of delay and raises a substantial question of law or fact likely to result in reversal, a new trial, a sentence that does not include any imprisonment, or a reduced sentence of imprisonment less than the expected duration of the appeal process. 18 U.S.C. § 3143(b); *see also United States v. Handy*, 761 F.2d 1279, 1283 (9th Cir. 1985). Louis Kealoha has the burden to establish all of these elements. *See United States v. Montoya*, 908 F.2d 450, 451 (9th Cir. 1990).  Following his trial and guilty plea, Louis Kealoha simply cannot meet these standards.

Louis Kealoha has waived appeal and collateral attack in both of his cases. Therefore, he cannot show any appeal that raises a "substantial question" of law or fact that is "fairly debatable," and that "if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial on all counts on which imprisonment has been imposed."  Louis Kealoha cannot show that a sentence will be imposed that will not include a term of imprisonment, or a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process. *Handy*, 761 F.2d at 1283.

Even assuming Louis Kealoha could satisfy the second prong of the test, a substantial sentence imposed in this case provides a powerful incentive to flee. Moreover, Louis Kealoha's recent police contacts on February 23, 2020 that resulted

from a bloodied and drunken fist-fight with his brother, reveal that Louis Kealoha may be a danger to himself and to the community.

For all of these reasons, Louis Kealoha should be remanded after sentencing.

## VI

## CONCLUSION

Louis Kealoha wielded the power of the chief of police to wrongfully frame an innocent man for a crime he knew he did not commit.  He conspired with Katherine Kealoha, Derek Hahn, and Bobby Nguyen to obstruct justice, including providing perjured testimony in this federal courthouse.  Moreover, Louis Kealoha, blinded by his greed and the façade of financial success, engaged in bank fraud.  In his wake, Louis Kealoha left behind his victims – Florence Puana, Gerard Puana, Ransen Taito, and Ariana Taito.  For all of his criminal conduct, the Court should adopt the United States' recommendations and sentence Louis Kealoha accordingly.

Dated: March 13, 2020.                    Respectfully submitted,

WILLIAM P. BARR
United States Attorney General
ROBERT S. BREWER, JR.
United States Attorney

*s/ Joseph J.M. Orabona*
MICHAEL G. WHEAT
JOSEPH J.M. ORABONA
JANAKI S. GANDHI
COLIN M. MCDONALD
Special Attorneys to the Attorney General

# UNITED STATES DISTRICT COURT
## DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br> v.<br><br>LOUIS M. KEALOHA (2),<br><br>     Defendant. | CR. NO. 17-00582 JMS-WRP<br>CR. NO. 18-00068 JMS-WRP<br><br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED that:

I, Joseph J.M. Orabona, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, CA 92101-8893.

I am not a party to the above-entitled action. Upon filing, I will serve the foregoing on the following individuals:

1. Rustam Barbee
   1188 Bishop Street
   Suite 2606
   Honolulu, HI 96813
   Email: rustam@honoluluatty.com
   Counsel for Louis M. Kealoha

2. Darsie J.T. Ing-Dodson
   Senior U.S. Probation Officer
   Honolulu, HI 96850-0001
   darsie_ing-dodson@hip.uscourts.gov

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 13, 2020.

        *s/ Joseph J.M. Orabona*
        JOSEPH J.M. ORABONA
        Special Attorney to the Attorney General