```
 1                IN THE UNITED STATES DISTRICT COURT

 2                   FOR THE DISTRICT OF HAWAII

 3
      UNITED STATES OF AMERICA,   ) CRIMINAL NO. 17-00582JMS-WRP
 4                                )
                Plaintiff,        ) Honolulu, Hawaii
 5                                ) October 22, 2019
           vs.                    )
 6                                )
      LOUIS M. KEALOHA (2),       ) HEARING ON SENTENCING
 7                                )  AGREEMENT AND APPELLATE
                Defendant.        )  WAIVER
 8    _____   )
      UNITED STATES OF AMERICA,   )
 9                                ) CRIMINAL NO. 18-00068JMS-WRP
                Plaintiff,        )
10                                )
           vs.                    ) CHANGE OF PLEA
11                                )
      LOUIS M. KEALOHA (2),       )
12                                )
                Defendant.        )
13    _____   )

14

15                    TRANSCRIPT OF PROCEEDINGS
16         BEFORE THE HONORABLE J. MICHAEL SEABRIGHT
                CHIEF UNITED STATES DISTRICT JUDGE
17
      APPEARANCES:
18
      For the Government:       MICHAEL G. WHEAT, ESQ.
19                              Special Attorney to the
                                 Attorney General
20                              United States Attorney's Office
                                880 Front Street, Room 6293
21                              San Diego, California  92101

22

23    For Defendant            RUSTAM A. BARBEE, ESQ.
      Louis M. Kealoha:        Attorney at Law
24                             1188 Bishop Street, Suite 2606
                               Honolulu, Hawaii  96813
25
```

1

2   Official Court              Cynthia Fazio, RMR, CRR, CRC
    Reporter:                   United States District Court
3                               300 Ala Moana Blvd., C-270
                                Honolulu, Hawaii  96850
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

    Proceedings recorded by machine shorthand, transcript produced
25  with computer-aided transcription (CAT).

```
 1   TUESDAY, OCTOBER 22, 2019                    2:32 P.M.

 2            THE COURTROOM MANAGER:  Criminal Number

 3   17-00582JMS-WRP, Criminal Number 18-00068JMS-WRP-2, United

 4   States of America versus Louis M. Kealoha.

 5            This case has been called for hearing on sentencing

 6   agreement and appellate waiver for Criminal 17-00582 and a

 7   change of plea hearing for Criminal 18-00068.

 8            Counsel, please make your appearance for the record.

 9            MR. WHEAT:  Good afternoon, Your Honor.  Michael Wheat

10   for the United States, joined by Laura Salazar at the table.

11            THE COURT:  Yes.

12            MR. BARBEE:  Good afternoon, Your Honor.  Rustam

13   Barbee appearing with Louis M. Kealoha.  He's present in court.

14            THE COURT:  All right.  Yes, good afternoon to both of

15   you.

16            All right.  So, Mr. Kealoha, I understand that you

17   wish to enter a plea of guilty to Count 4 in Criminal Number

18   18-00068, what we've been calling the second case or the bank

19   fraud case, pursuant to a plea agreement, and at the same time

20   to enter into a sentencing agreement and appellate waiver in

21   17-582, the case that we just had a trial in; is that accurate,

22   sir?

23            DEFENDANT L. KEALOHA:  Yes, sir.

24            THE COURT:  Okay.  I'm going to have you approach up

25   here then if you will with Mr. Barbee.
```

 1            All right, sir, before I can accept your guilty plea
 2    there are a number of questions I need to ask you to make
 3    certain that your plea is knowing, valid and voluntary.  So, if
 4    you don't understand a question at any time please just ask me
 5    to repeat or rephrase the question, I'll be happy to do that.
 6            DEFENDANT L. KEALOHA:  Yes.
 7            THE COURT:  And if you want to consult with Mr. Barbee
 8    in private at any point during these proceedings, all you have
 9    to do is ask me and I'll be happy to let you do so.  Do you
10    understand all that?
11            DEFENDANT L. KEALOHA:  Yes, sir.
12            THE COURT:  All right.  Can we swear the defendant,
13    please?
14            (The Defendant was sworn to answer truthfully.)
15            THE COURT:  Do you understand you are now under oath
16    and if you answer any of my questions falsely, those false
17    answers could be used against you in a separate prosecution for
18    perjury or making a false statement?
19            DEFENDANT L. KEALOHA:  Yes, sir.
20            THE COURT:  What is your full legal name?
21            DEFENDANT L. KEALOHA:  Louis Mahina Kealoha.
22            THE COURT:  And how old are you, sir?
23            DEFENDANT L. KEALOHA:  59.
24            THE COURT:  How far did you go in school?
25            DEFENDANT L. KEALOHA:  I have a doctorate of

1   education.

2          THE COURT:  All right.  And you read and speak

3   English?

4          DEFENDANT L. KEALOHA:  Yes, sir.

5          THE COURT:  Okay.  What is your most recent

6   employment?

7          DEFENDANT L. KEALOHA:  The Honolulu Police Department.

8          THE COURT:  Now, have you taken any illegal drugs in

9   the last 48 hours?

10          DEFENDANT L. KEALOHA:  No, sir.

11          THE COURT:  Have you had any alcohol in the last 48

12   hours?

13          DEFENDANT L. KEALOHA:  No, Your Honor.

14          THE COURT:  Have you taken any -- are you prescribed

15   any prescription drugs right now?

16          DEFENDANT L. KEALOHA:  No, sir.

17          THE COURT:  Have you taken any prescription drugs in

18   the last 48 hours?

19          DEFENDANT L. KEALOHA:  No, Your Honor.

20          THE COURT:  So you're clean and sober right now?

21          DEFENDANT L. KEALOHA:  Yes, sir.

22          THE COURT:  And you're thinking clearly?

23          DEFENDANT L. KEALOHA:  Yes, sir.

24          THE COURT:  Have you ever been treated for mental

25   illness or addiction to drug or alcohol?

1            DEFENDANT L. KEALOHA:  No, sir.

2            THE COURT:  Can you tell me in your own words what you

3    came to court to do today.

4            DEFENDANT L. KEALOHA:  To plead guilty to the bank

5    fraud, Count 4.

6            THE COURT:  All right.  Now, have you had enough time

7    to talk to Mr. Barbee about the bank fraud case, the facts of

8    the case, and your decision to plead guilty as well as the

9    agreement set forth in the sentencing agreement and appellate

10   waiver in the mailbox trial?

11           DEFENDANT L. KEALOHA:  Yes, Your Honor.

12           THE COURT:  Are you fully satisfied with Mr. Barbee's

13   representation of you in this matter?

14           DEFENDANT L. KEALOHA:  Yes, Your Honor.

15           THE COURT:  Has anyone made any promise or assurance

16   to you of any kind in an effort to get you to plead guilty

17   other than what is in the plea agreement and the sentencing

18   agreement and appellate waiver?

19           DEFENDANT L. KEALOHA:  No, Your Honor.

20           THE COURT:  Has anyone threatened you or threatened

21   anyone else or forced you in any way to plead guilty?

22           DEFENDANT L. KEALOHA:  No, Your Honor.

23           THE COURT:  Are you pleading guilty of your own free

24   will because you are guilty?

25           DEFENDANT L. KEALOHA:  Yes, Your Honor.

```
 1              THE COURT:  Mr. Barbee, do you have any reason to
 2   doubt your client's competence to enter a valid and voluntary
 3   plea?
 4              MR. BARBEE:  No, Your Honor, I don't.
 5              THE COURT:  So, you have reviewed the third
 6   superseding indictment in 18-68, Mr. Kealoha?
 7              DEFENDANT L. KEALOHA:  Yes, Your Honor.
 8              THE COURT:  All right.  And in brief, can you go over
 9   Count 4 of that, Mr. Wheat?
10              MR. WHEAT:  Count 4 as to what it is?
11              THE COURT:  The first superseding indictment, right?
12              MR. WHEAT:  Yes.
13              THE COURT:  I'm sorry, the third superseding
14   indictment.
15              MR. WHEAT:  Third superseding indictment.  Count 4
16   involves a bank fraud allegation involving Mr. Kealoha and
17   Ms. Kealoha entering into a scheme to defraud the bank by
18   filing false documents relating to rental income to inflate
19   their assets to obtain a loan for $150,000 from the Hawaii
20   Central Federal Credit Union.
21              THE COURT:  All right.  So, Mr. Kealoha, did you read
22   that charge?
23              DEFENDANT L. KEALOHA:  Yes, sir.
24              THE COURT:  And you went over it with Mr. Barbee?
25              DEFENDANT L. KEALOHA:  Yes.
```

```
 1              THE COURT:  You understand it?
 2              DEFENDANT L. KEALOHA:  Yes.
 3              THE COURT:  Do you have any questions for me or
 4    Mr. Barbee regarding that charge?
 5              DEFENDANT L. KEALOHA:  No.
 6              THE COURT:  Okay.  So the maximum penalties,
 7    Mr. Wheat?
 8              MR. WHEAT:  Your Honor, the maximum potential
 9    penalties for that crime are up to 30 years in custody, a
10    $1 million fine -- one second, Your Honor.
11              $100 special assessment.  Up to five years of
12    supervised release.  An order of restitution and forfeiture of
13    property to the United States.
14              THE COURT:  All right.  Do you agree with that,
15    Mr. Barbee?
16              MR. BARBEE:  Yes, Your Honor.
17              THE COURT:  All right.  Okay.  So now we have this
18    plea agreement in addition to the sentencing agreement and
19    appellate waiver.  So I'm going to start with this sentencing
20    agreement and appellate waiver, Mr. Kealoha.
21              As I understand the nature of this plea, you have to
22    sort of agree to be bound to both of these agreements for
23    either one of them to be operative; do you understand that?
24              DEFENDANT L. KEALOHA:  Yes, sir.
25              THE COURT:  In other words, they're sort of married
```

1   together, right?

2          DEFENDANT L. KEALOHA:  Yes.

3          THE COURT:  Okay.  So under the sentencing agreement,

4   you agree and stipulate that the facts set forth in the

5   presentence report in this case, which is ECF docket number

6   888, are true and accurate and should be considered as relevant

7   conduct for your sentencing; do you understand that?

8          DEFENDANT L. KEALOHA:  Yes, sir.

9          THE COURT:  That means you're admitting to the facts

10  set forth in that report; do you understand that?

11         DEFENDANT L. KEALOHA:  Yes.

12         THE COURT:  And you're admitting those as true?

13         DEFENDANT L. KEALOHA:  Yes, sir.

14         THE COURT:  All right.  Now, there are a number of

15  agreements as to sentencing.  You were here when I went over

16  this with Mrs. Kealoha, but let me make sure you understand

17  this.  Okay.  If you'll go to Page 4 of the sentencing

18  agreement, and the same information should be set forth in the

19  plea agreement on Page 11 as well.  So for the -- you're

20  agreeing to have both the bank fraud and the mailbox cases

21  consolidated for sentencing, you understand that?

22         DEFENDANT L. KEALOHA:  Yes.

23         THE COURT:  Okay.  And I'm agreeing to that, you

24  understand that?

25         DEFENDANT L. KEALOHA:  Yes, sir.

1          THE COURT:  Okay.  So as far as the first case,

2   17-582, both parties are agreeing under the United States

3   sentencing guidelines the base offense level is 19; do you

4   understand that?

5          DEFENDANT L. KEALOHA:  Yes.

6          THE COURT:  Then the government apparently is going to

7   be seeking upward adjustments of one for plus six levels, one

8   for plus two and another for plus two.

9          DEFENDANT L. KEALOHA:  Yes.

10         THE COURT:  You are free to challenge those upward

11   adjustments under the guidelines; do you understand that?

12         DEFENDANT L. KEALOHA:  Yes.

13         THE COURT:  For the bank fraud case, you and the

14   government are in total agreement as to what those guidelines

15   would look like.

16         DEFENDANT L. KEALOHA:  Yes.

17         THE COURT:  Which would be a base offense level seven,

18   plus two under 2B1.1(b)(2)(A), and plus two for 2B1.1(b)(17).

19   Is that (b)(17), Mr. --

20         MR. WHEAT:  I think it should be (b)(7).

21         THE COURT:  (b)(7)?  Okay.  Mr. Barbee, do you know

22   offhand?

23         MR. BARBEE:  No.

24         THE COURT:  I can look --

25         MR. BARBEE:  I didn't bring my book.

```
 1              THE COURT:  I can look.  All right.  We can make that
 2    change.  I think it should be (b)(7) also.  2B1.1(b)(7)?
 3              MR. WHEAT:  So it should be B1 -- let's see what it is
 4    here -- plus two should be --
 5              THE COURT:  Oh, no, it is 17.
 6              MR. WHEAT:  17.
 7              THE COURT:  Okay.  It's just there's a bracket instead
 8    of a --
 9              MR. WHEAT:  Yeah, it should be a bracket.
10              THE COURT:  -- parenthetical.  Okay.  All right.
11    That's fine.  I think it's clear enough then.
12              MR. WHEAT:  Yup.
13              THE COURT:  All right.  So you agree there's an
14    agreement -- you understand there's an agreement as to those
15    guidelines?
16              DEFENDANT L. KEALOHA:  Yes, sir.
17              THE COURT:  Okay.  All right.  So you also understand
18    the government's agreeing that however I determine the
19    guidelines apply here, and that's still an unknown, you
20    understand that, right?
21              DEFENDANT L. KEALOHA:  Yes, sir.
22              THE COURT:  Whatever I determine, it will recommend a
23    sentence within that advisory guideline range; do you
24    understand that?
25              DEFENDANT L. KEALOHA:  Yes, sir.
```

```
 1              THE COURT:  Okay.  And you will not be able to
 2    recommend any downward adjustments or departures, but you can
 3    request a lower sentence based on the 3553(a) factors; do you
 4    understand that?
 5              DEFENDANT L. KEALOHA:  Yes, sir.
 6              THE COURT:  Okay.
 7              MR. BARBEE:  Yes, Your Honor, it's also our
 8    understanding with the final presentence report, there's two
 9    additional enhancements that I think we're reserving our right
10    to object to.
11              THE COURT:  Which ones are those?
12              MR. BARBEE:  I believe Probation gave him a
13    three-level role in the offense instead of what the --
14              THE COURT:  Okay.  Okay.
15              MR. BARBEE:  And then there was an additional one for
16    abuse of public trust.
17              THE COURT:  Okay.  All right.  So yes, essentially
18    you're agreeing to the bank fraud, agreeing to a base 19 on the
19    mailbox, but you're free to otherwise object.
20              MR. BARBEE:  Yes.
21              THE COURT:  Is that a fair statement?
22              MR. BARBEE:  Yes, Your Honor.
23              THE COURT:  Okay.  As far as the offense levels?
24    Okay.  All right.
25              Also, the parties estimate the total amount of
```

1    restitution for the mailbox case is $289,714.96; do you

2    understand that?

3              DEFENDANT L. KEALOHA:  Yes.

4              THE COURT:  Now, the government's going to be asking

5    that you be responsible for 25 percent of that, such that you

6    would be responsible to Gerard Puana in the amount of 11,565.25

7    and Florence Puana in the amount of 60,863.49; do you

8    understand that?

9              DEFENDANT L. KEALOHA:  Yes, sir.

10             THE COURT:  Again, you understand none of this is

11   binding on me?

12             DEFENDANT L. KEALOHA:  Yes.

13             THE COURT:  Okay.  All right.  Now, do you also

14   understand both the plea agreement and the sentencing agreement

15   and appellate waiver for both the mailbox case and then the

16   bank fraud case, you are waiving or giving up to the full

17   extent of the law your right to appeal to the Ninth Circuit

18   Court of Appeals or to bring any sort of what we call

19   collateral challenge to the conviction or sentence; do you

20   understand that?

21             DEFENDANT L. KEALOHA:  Yes, sir.

22             THE COURT:  Now, I know you're not a lawyer, so I'm

23   going to explain this in a little more detail.  Okay.  Normally

24   after a conviction and sentence here in federal court there are

25   two ways by which you can challenge a conviction and/or

1    sentence that you thought was unlawful or unconstitutional.

2            The first is to appeal to the Ninth Circuit Court of

3    Appeals.  And that court sits to determine if errors are made

4    here at the trial court level.

5            The second way, we call it a collateral challenge.

6    That's sort of a fancy way of just saying you come to me and

7    asking for some relief.  Okay.  Typically you do it through a

8    2255 motion, but there are other ways to do it as well.  This

9    morning I talked about a coram nobis or other habeas rights.

10   Through this plea agreement you're waiving your right to bring

11   any sort of appeal or collateral challenge to either the trial

12   that just concluded or to your plea to the bank fraud count,

13   with one exception; do you understand that?

14           DEFENDANT L. KEALOHA:  Yes, sir.

15           THE COURT:  The exception is you can bring a claim of

16   ineffective assistance of counsel; do you understand that?

17           DEFENDANT L. KEALOHA:  Yes.

18           THE COURT:  Otherwise you're giving up all your rights

19   to appeal or bring any other collateral challenge; do you

20   understand?

21           DEFENDANT L. KEALOHA:  Yes.

22           THE COURT:  Now, do you also understand the government

23   may appeal the sentence that I impose in this case?

24           DEFENDANT L. KEALOHA:  Yes.

25           THE COURT:  You understand that?

1          DEFENDANT L. KEALOHA:  Yes.

2          THE COURT:  Finally, do you understand that if you

3     breach one of the conditions either in the -- in the sentencing

4     agreement and appellate waiver or the plea agreement, any

5     statements made by you under oath at the hearing here today and

6     the factual stipulation in Paragraph 2 of this agreement, and

7     any evidence derived from such statements would be admissible

8     against you in any prosecution; do you understand that?

9          DEFENDANT L. KEALOHA:  Yes, sir.

10          THE COURT:  And you would be waiving or giving up your

11     rights whether under the Constitution or the laws of the United

12     States or Rule 11(f) of the Rules of Criminal Procedure or Rule

13     410 of the Federal Rules of Evidence to argue otherwise; do you

14     understand that?

15          DEFENDANT L. KEALOHA:  Yes.

16          THE COURT:  Okay.  And do you understand that when you

17     go to Paragraph 2 that takes you back to the agreement that all

18     of the facts set forth in the presentence report are true and

19     accurate; do you understand that?

20          DEFENDANT L. KEALOHA:  Yes.

21          THE COURT:  All right.  Do you have any questions for

22     me about the sentencing agreement and appellate waiver?

23          DEFENDANT L. KEALOHA:  No, Your Honor.

24          THE COURT:  Mr. Barbee, Mr. Wheat, is there anything

25     else in that agreement you want me to cover?

1              MR. WHEAT:  No, Your Honor.

2              MR. BARBEE:  No, Your Honor.

3              THE COURT:  All right.  So let's go back to the plea

4    agreement then.  Okay.  We went over the maximum penalties,

5    correct?

6              DEFENDANT L. KEALOHA:  Yes.

7              THE COURT:  And you understand those?

8              DEFENDANT L. KEALOHA:  Yes, sir.

9              THE COURT:  Okay.  So as I understand this plea

10   agreement, you're agreeing to plead guilty to Count 4 and the

11   government will move after sentencing to dismiss the remaining

12   charges against you; do you understand that?

13             DEFENDANT L. KEALOHA:  Yes, sir.

14             THE COURT:  You're also agreeing that the statements

15   of facts set forth in Paragraph 7 of the plea agreement are

16   true and accurate; do you understand that?

17             DEFENDANT L. KEALOHA:  Yes, sir.

18             THE COURT:  Now, just like with the sentencing

19   agreement and appellate waiver, you are waiving or giving up

20   your right to bring any sort of appeal or collateral challenge

21   other than the claim of ineffective assistance; do you

22   understand that?

23             DEFENDANT L. KEALOHA:  Yes, sir.

24             THE COURT:  Now, if I look at Paragraph 21, it deals

25   with forfeiture, it says you agree to forfeit a money judgment

1   in the amount of 228,746.79, then proceeds of 63,476.97 and a

2   Rolex watch.  Subparagraph (3), the Hawaii Kai property is

3   really moot, is not relevant now, correct, Mr. Wheat?

4            MR. WHEAT:  That is correct, Your Honor.

5            THE COURT:  Because that's -- the home had sold and

6   the proceeds from that that remain are reflected in Sub 2.

7            MR. WHEAT:  Correct.

8            THE COURT:  Okay.  Now, from what I understood with

9   the last plea, it's unclear if the government will seek the

10  full 228 plus change and the 63, but they could do so; do you

11  understand that?

12           DEFENDANT L. KEALOHA:  Yes, sir.

13           THE COURT:  And also the Rolex watch will be

14  forfeited; do you understand that?

15           DEFENDANT L. KEALOHA:  Yes, sir.

16           THE COURT:  And you also through this plea agreement

17  agree to cooperate in the entire forfeiture process, provide a

18  signature where needed, agree to a preliminary order of

19  forfeiture, essentially there are a lot of steps that have to

20  be taken and you agree to cooperate in the execution of all of

21  that; do you understand that?

22           DEFENDANT L. KEALOHA:  Yes, sir.

23           THE COURT:  Do you have any questions regarding any of

24  that?

25           DEFENDANT L. KEALOHA:  No, sir.

```
 1              THE COURT:  As far as restitution, Page 19,
 2    Paragraph 22(c) says:  The parties estimate the amount of
 3    restitution will be 165.269.82 to persons other than the victim
 4    of Count 4, to the -- for the offenses to which he has pled
 5    guilty.  So what does that include, Mr. Wheat, exactly?
 6              MR. WHEAT:  That includes the money to Ransen Taito
 7    and Ariana Taito.
 8              THE COURT:  Okay.  I see.  So that's -- that's the
 9    full amount?
10              MR. WHEAT:  Correct.
11              THE COURT:  Okay.  I see.  So on Ransen Taito it's
12    81,384.91.  For Ariana it would be 83,884.91.  And is it your
13    view that would be joint and several then, Mr. Wheat?
14              MR. WHEAT:  Correct.
15              THE COURT:  All right.  So the government's view on
16    this is that would be joint and several with Mrs. Kealoha.  In
17    other words, you don't pay it twice, but each of you would be
18    responsible for the payment of it; do you understand that?
19              DEFENDANT L. KEALOHA:  Yes.
20              THE COURT:  Okay.  Do you have any questions regarding
21    that?
22              DEFENDANT L. KEALOHA:  No.
23                   (Counsel and client conferring.)
24              THE COURT:  You okay?
25              DEFENDANT L. KEALOHA:  Yes, sir.
```

```
 1              THE COURT:  Okay.  So, also set forth in the plea
 2    agreement, like the sentencing agreement, appellate waiver, if
 3    you breach this plea agreement you understand that any
 4    statements you made today, the factual basis statement in
 5    Paragraph 7 of the plea agreement and evidence derived from the
 6    statements may be used against you in any future proceeding and
 7    you waive your right to argue otherwise; do you understand
 8    that?
 9              DEFENDANT L. KEALOHA:  Yes, sir.
10              THE COURT:  Okay.  You also agree to fully cooperate
11    with the United States; is that right?
12              DEFENDANT L. KEALOHA:  Yes, sir.
13              THE COURT:  Okay.  I want to make sure you understand
14    the nature of that.  I'm not going to get into what that
15    entails, I'm just going to ask you some questions about the
16    nature of that.
17              Under United States sentencing guidelines
18    Section 5K1.1, before sentencing the government can move,
19    asking for a reduced sentence based on your cooperation.  Or if
20    it comes after sentencing, it would be pursuant to Rule 35(b)
21    of the Federal Rules of Criminal Procedure.
22              With Mrs. Kealoha I talked about 3553(e).  That
23    doesn't apply to you because you don't have any mandatory
24    minimum sentencing.  Do you understand that?
25              DEFENDANT L. KEALOHA:  Yes, sir.
```

1          THE COURT:  Because the aggravated identity theft

2     applies only to her, do you understand?

3          DEFENDANT L. KEALOHA:  Yes, sir.

4          THE COURT:  Okay.  So what I want to make sure you

5     understand is, that the decision as to whether to file a

6     motion, whether under 5K1.1 of the guidelines or

7     Section 35(b) -- I'm sorry, Rule 35(b) of the Rules of Criminal

8     Procedure, the decision whether to file such a motion rests

9     entirely with the United States Attorney's Office for the

10    Southern District of California; do you understand that?

11         DEFENDANT L. KEALOHA:  Yes.  Yes, sir.

12         THE COURT:  You cannot force them to file that motion

13    nor can you have me force them to file that motion.  It rests

14    entirely with them in making that decision; do you understand

15    that?

16         DEFENDANT L. KEALOHA:  Yes, sir.

17         THE COURT:  Do you understand this agreement does not

18    require them to make such a motion?

19         DEFENDANT L. KEALOHA:  Yes, sir.

20         THE COURT:  You understand that in the event they do

21    file a motion, and whether I grant the motion is within my

22    discretion.  If I do grant it, how far down I go is also in my

23    discretion; do you understand that?

24         DEFENDANT L. KEALOHA:  Yes, sir.

25         THE COURT:  Do you also understand that if such a

1   motion is not filed for any reason, which again, you can't

2   control and I can't control, right, as far as making them do

3   it, you won't be able to withdraw from the plea agreement; do

4   you understand that?

5           DEFENDANT L. KEALOHA:  Yes, sir.

6           THE COURT:  Okay.  Do you have any questions about

7   that?

8           DEFENDANT L. KEALOHA:  No, sir.

9           THE COURT:  Are there any other terms of this plea

10  agreement I didn't go over, counsel, that you believe I should?

11          MR. WHEAT:  No, Your Honor.

12          MR. BARBEE:  No, Your Honor.

13          THE COURT:  So you have entered into this written plea

14  agreement with the United States, correct?

15          DEFENDANT L. KEALOHA:  Yes, sir.

16          THE COURT:  Did you read that entire agreement?

17          DEFENDANT L. KEALOHA:  Yes, sir.

18          THE COURT:  Did you then sign it?

19          DEFENDANT L. KEALOHA:  Yes.

20          THE COURT:  Well, let me back up.  After you read it,

21  did you discuss it with Mr. Barbee?

22          DEFENDANT L. KEALOHA:  Yes, sir.

23          THE COURT:  And did you then sign it?

24          DEFENDANT L. KEALOHA:  Yes, sir.

25          THE COURT:  Okay.  So at the time you signed it, did

1    you understand all the terms of the plea agreement?

2              DEFENDANT L. KEALOHA:  Yes, sir.

3              THE COURT:  Meaning you were able to discuss it and

4    get all answers from Mr. Barbee --

5              DEFENDANT L. KEALOHA:  Yes, sir.

6              THE COURT:  -- to your questions?

7              Okay.  And is that your signature on the last page of

8    the plea agreement?

9              DEFENDANT L. KEALOHA:  Yes, sir.

10             THE COURT:  Is it the same for the sentencing

11   agreement, is that your signature?

12             DEFENDANT L. KEALOHA:  Yes, sir.

13             THE COURT:  Likewise, you signed that after reading it

14   and discussing it with Mr. Barbee?

15             DEFENDANT L. KEALOHA:  Yes, sir.

16             THE COURT:  And understanding it?

17             DEFENDANT L. KEALOHA:  Yes, sir.

18             THE COURT:  Does the plea agreement and the sentencing

19   agreement and appellate waiver reflect the entirety of the

20   agreement -- of the agreements you have with the United States

21   in this matter?

22             DEFENDANT L. KEALOHA:  Yes, sir.

23             THE COURT:  There are no side agreements?

24             DEFENDANT L. KEALOHA:  No, sir.

25             THE COURT:  No other agreements at all?

1          DEFENDANT L. KEALOHA:  No, sir.

2          THE COURT:  No oral agreements, anything like that?

3          DEFENDANT L. KEALOHA:  No, sir.

4          THE COURT:  Do you understand I am not required to

5     accept these agreements but can reject them after reviewing a

6     presentence report?

7          DEFENDANT L. KEALOHA:  Yes, sir.

8          THE COURT:  Now, I covered this this morning a lot

9     because there are a lot of agreements in both the sentencing

10    agreement and appellate waiver and the plea agreement.  There

11    are a number of stipulations.  And the stipulations are binding

12    on you and are binding on the United States, the two parties,

13    you and the United States have agreed on a lot of matters, and

14    you will be bound by that, you can't back off that at

15    sentencing.

16         DEFENDANT L. KEALOHA:  Yes, sir.

17         THE COURT:  But I want to make sure you understand I

18    am not bound by that, but I in my discretion could reject a

19    stipulation --

20         DEFENDANT L. KEALOHA:  Yes, sir.

21         THE COURT:  -- between the parties, you understand

22    that?

23         DEFENDANT L. KEALOHA:  Yes, sir.

24         THE COURT:  All right.  Now, I want to go over some

25    important rights that you give up by entering a plea of guilty

1    here today.

2         Do you understand under the Constitution and laws of

3    the United States, you have a right to persist in a plea of not

4    guilty as to the bank fraud case, 17-582 -- I'm sorry, as to

5    the bank fraud case, 18-68, you have a right to persist in a

6    plea of not guilty and are entitled to a trial on those charges

7    against you?

8         DEFENDANT L. KEALOHA:  Yes, sir.

9         THE COURT:  Now, you waived earlier your right to a

10   jury trial on that.

11        DEFENDANT L. KEALOHA:  Yes, sir.

12        THE COURT:  So I'm going to talk about this as if I

13   was going to try the case.  Okay?

14        DEFENDANT L. KEALOHA:  Okay, sir.

15        THE COURT:  All right.  Do you understand at trial you

16   would be presumed innocent and the government would have the

17   burden to present evidence to prove your guilt beyond a

18   reasonable doubt, this means at no time would you have the

19   burden to prove that you are not guilty; do you understand

20   that?

21        DEFENDANT L. KEALOHA:  Yes, sir.

22        THE COURT:  To be found guilty as to each individual

23   charge, I would have to make a finding of guilt beyond a

24   reasonable doubt as to each essential element; do you

25   understand that?

1              DEFENDANT L. KEALOHA:  Yes, sir.

2              THE COURT:  And if for some reason it went to trial by

3    jury, a jury of 12 impartial citizens would have to make that

4    same finding; do you understand that?

5              DEFENDANT L. KEALOHA:  Yes, sir.

6              THE COURT:  Okay.  Do you understand that if you wish

7    to go to trial, Mr. Barbee would stay with you throughout that

8    trial process free of charge?

9              DEFENDANT L. KEALOHA:  Yes, sir.

10              THE COURT:  Do you understand that at a trial you

11    would have the right to see and hear all the government

12    witnesses, and have them questioned or what we call

13    cross-examined by your attorney?

14              DEFENDANT L. KEALOHA:  Yes, sir.

15              THE COURT:  You could object to evidence offered by

16    the government and you could offer evidence on your own behalf

17    and you could force or compel witnesses to appear in court to

18    testify using the court's subpoena power; do you understand

19    that?

20              DEFENDANT L. KEALOHA:  Yes, sir.

21              THE COURT:  Now, if you went to trial in the bank

22    fraud case, after the government rests, in the defense case you

23    would have a decision to make, and that is whether to testify

24    or not to testify.  And you would have an absolute right to

25    testify and you would have an absolute constitutional right not

1    to testify.  But the decision whether to testify or not to

2    testify is a decision that you would have to make.  Presumably

3    Mr. Barbee would give you his best advice, but at the end of

4    the day, just like the decision to plead guilty is yours and

5    not Mr. Barbee's, the decision if you went to trial whether to

6    testify would be your decision and not Mr. Barbee's.  Do you

7    understand that?

8            DEFENDANT L. KEALOHA:  Yes, sir.

9            THE COURT:  And if you elected or chose to testify,

10   you would get on the witness stand and testify, and I would

11   tell the jury to gauge or judge your believability using the

12   same standards as they apply to all other witnesses; do you

13   understand that?

14           DEFENDANT L. KEALOHA:  Yes, sir.

15           THE COURT:  And if you chose not to testify, the jury

16   could not hold that fact against you because I would tell the

17   jury as a matter of law that they could draw no inference or

18   suggestion of guilt because you did not testify.  Do you

19   understand all that?

20           DEFENDANT L. KEALOHA:  Yes, sir.

21           THE COURT:  All right.  Do you understand that by

22   entering a plea of guilty, if I accept your plea, there will be

23   no trial and you will have waived or given up your right to a

24   trial as well as all these other rights we just discussed?

25           DEFENDANT L. KEALOHA:  Yes, sir.

```
 1              THE COURT:  Do you also understand you have to give up
 2    your right to remain silent as to Count 4 of the third
 3    superseding indictment in 18-68 because I will ask you
 4    questions of what you did that makes you guilty?
 5              DEFENDANT L. KEALOHA:  Yes, sir.
 6              THE COURT:  Do you have any questions for me or
 7    Mr. Barbee regarding these rights?
 8              DEFENDANT L. KEALOHA:  No, sir.
 9              THE COURT:  Knowing these rights do you still wish to
10    go forward with your plea of guilty?
11              DEFENDANT L. KEALOHA:  Yes, sir.
12              THE COURT:  You are a U.S. citizen, correct?
13              DEFENDANT L. KEALOHA:  Yes.
14              THE COURT:  So this is a felony offense and that means
15    if you are convicted and if I adjudge you guilty, you may be
16    deprived of valuable civil rights, that includes the right to
17    vote, the right to hold public office, the right to serve on a
18    jury and the right to possess any type of firearm or
19    ammunition; do you understand that?
20              DEFENDANT L. KEALOHA:  Yes, sir.
21              THE COURT:  You aren't currently charged or serving
22    any sort of criminal sentence in any other court; that's
23    correct?
24              DEFENDANT L. KEALOHA:  Yes, sir.
25              THE COURT:  Okay.  All right.  Let's talk about
```

1   sentencing a little bit.  The United States law does set forth

2   these detailed sentencing guidelines that I must consider at

3   the time I impose sentence.  These guidelines are advisory only

4   and in addition to them I must consider other sentencing

5   factors set forth in the law at 18 U.S.C. Section 3553(a).  So

6   have you and Mr. Barbee discussed the sentencing guidelines and

7   these other sentencing factors and how they may apply in your

8   case?

9           DEFENDANT L. KEALOHA:  Yes, sir.

10          THE COURT:  Do you understand that you will not know

11  what the final guideline calculation is until the day of

12  sentencing because the way the system works is, you will file

13  objections -- first of all, let me back up.

14          A new report will be prepared because the report

15  that's been prepared already only deals with the bank -- I'm

16  sorry, the mailbox case, not the bank fraud case.  So a

17  consolidated report will be prepared.

18          In the interim I said we're going to have this hearing

19  to make some -- some decisions that cut across all four

20  defendants from the first trial.  But there will be individual

21  issues that will apply to your case.  And only on the day of

22  sentencing would I rule on any objections to the report and

23  then announce what the actual guidelines are; do you understand

24  that?

25          DEFENDANT L. KEALOHA:  Yes, sir.

1          THE COURT:  Do you understand that after I determine

2    the guidelines, I will consider the guidelines and the other

3    sentencing factors, and I may impose a sentence below the

4    guideline range, within the guideline range, or above the

5    guideline range; do you understand that?

6          DEFENDANT L. KEALOHA:  Yes, sir.

7          THE COURT:  Do you understand if the sentence is worse

8    or more severe than you had hoped or expected to receive or

9    worse or more severe than called for by the guidelines, you

10   will not be able to withdraw from your plea of guilty; do you

11   understand that?

12         DEFENDANT L. KEALOHA:  Yes, sir.

13         THE COURT:  In other words, there's no buyer's

14   remorse.  You get that?

15         DEFENDANT L. KEALOHA:  Yes.

16         THE COURT:  All right.  Now, you may have had

17   discussions with Mr. Barbee and maybe others as to the type of

18   sentence you may receive.  As I think I said this morning,

19   there's been certain press reports as to what the sentence may

20   look like, but I want to make sure you understand nothing

21   Mr. Barbee has told you or anyone else has told you or what

22   anyone may be reporting is binding on me in any way, but I can

23   sentence you up to the maximum permitted by law; do you

24   understand that?

25         DEFENDANT L. KEALOHA:  Yes.

1            THE COURT:  Has anyone made any promise to you of any

2    sort as to what your sentence will be?

3            DEFENDANT L. KEALOHA:  No, sir.

4            THE COURT:  Do you understand there is no limitation

5    on the information that I may consider at the time of

6    sentencing concerning your background, character and conduct,

7    provided the information is sufficiently reliable?

8            DEFENDANT L. KEALOHA:  Yes, sir.

9            THE COURT:  Do you understand that if you are

10   sentenced to prison, a term of supervised release will follow,

11   and if you violate a condition of supervised release you can be

12   sent back to prison?

13           DEFENDANT L. KEALOHA:  Yes, sir.

14           THE COURT:  Do you understand there is no parole in

15   the federal system?  There is a good time credit that you may

16   be entitled to, but there is no parole; do you understand that?

17           DEFENDANT L. KEALOHA:  Yes, sir.

18           THE COURT:  And we've already gone over restitution

19   and forfeiture.

20           Is there anything else on the restitution or

21   forfeiture, Mr. Wheat?

22           MR. WHEAT:  No, Your Honor.

23           THE COURT:  Okay.  All right.  So, Mr. Wheat, can you

24   go over the elements of bank fraud?

25           MR. WHEAT:  Certainly, Your Honor.  The elements for

1   bank fraud are defendant knowingly carried out a scheme or plan

2   to obtain money or property from a financial institution by

3   making false statements or promises.

4           Second, the defendant knew the statements or promises

5   were false.

6           Third, the statements or promises were material, that

7   is, they had a natural tendency to influence or were capable of

8   influencing a financial institution to part with money or

9   property.

10          Four, defendant acted with the intent to defraud and

11  the financial institution was federally insured.

12          THE COURT:  All right.  Mr. Barbee, let me start with

13  you and ask you if you agree.

14          MR. BARBEE:  Yes, I do agree, Your Honor.

15          THE COURT:  And turn to you, Mr. Kealoha, do you

16  understand?

17          DEFENDANT L. KEALOHA:  Yes, sir.

18          THE COURT:  Okay.  I'm now going to ask Mr. Wheat to

19  provide an overview of sort of the summary -- or summary of the

20  evidence he believes he can present if the case went to trial.

21  I want you to listen -- as to Count 4.  I want you to listen

22  carefully because when he's done I'm going to ask you if you

23  agree or disagree in whole or in part with what he stated here

24  in court.

25          DEFENDANT L. KEALOHA:  Yes, sir.

1          MR. WHEAT:  Your Honor, there's a more detailed

2     factual basis set forth at Pages 4 through 6 in Paragraph 7 of

3     the plea agreement.  But specifically as to Count 4, if this

4     matter were to go to trial, the United States would be able to

5     prove beyond a reasonable doubt that during June of 2012

6     defendant and co-defendant Katherine Kealoha applied for a loan

7     with the Hawaii Central Federal Credit Union, a second mortgage

8     loan in the amount of $150,000 on their then-residence 1018

9     Kealaolu Avenue.

10          And in doing so they obtained these funds by false

11     pretense.  Specifically, that in June of 2012 Katherine Kealoha

12     submitted a forged Hawaii residential lease agreement in the

13     name of Minh-Hung Bobby Nguyen and Maile Nguyen to give the

14     false impression that defendant Louis Kealoha and Katherine

15     Kealoha received rental income from these two individuals each

16     month.

17          On or about July of 2012 Louis Kealoha and his

18     co-defendant Katherine Kealoha falsely certified in a Form 1003

19     loan application that they had -- they received over $2,700 per

20     month in rental income.

21          Based upon these material false representations and

22     promises, the credit union granted Louis Kealoha and Katherine

23     Kealoha's mortgage application in the amount of $150,000.

24          Since this loan was ultimately paid in full, there's

25     no loss from that loan.

1          Hawaii Central Federal Credit Union was a credit union

2     with accounts insured by the National Credit Union

3     Administration.  And the defendant admits that the proceeds

4     from the sale of the residence at 7014 Niumalu Loop here in

5     Honolulu, namely $63,476.97, constituted proceeds derived from

6     his criminal conduct in this case and therefore subject to

7     criminal forfeiture.

8          Basically, those proceeds from the sale of that house,

9     they used the proceeds from 1018 to buy Niumalu.  So they're

10    proceeds from that account.

11         THE COURT:  All right.  So, Mr. Kealoha, did you

12    understand everything that Mr. Wheat just stated?

13         DEFENDANT L. KEALOHA:  Yes, sir.

14         THE COURT:  Is everything he stated true and accurate?

15         DEFENDANT L. KEALOHA:  Yes.

16         THE COURT:  Okay.  So why don't you tell me in your

17    own words what you did that makes you guilty of Count 4.

18         DEFENDANT L. KEALOHA:  Your Honor, just basically I

19    knew my wife and I submitted a loan application claiming that

20    we received rental income from the pool house.

21         THE COURT:  Pool, P-O-O-L?

22         DEFENDANT L. KEALOHA:  Pool.

23         THE COURT:  Swimming pool?

24         DEFENDANT L. KEALOHA:  Yes, yes.  Swimming pool house

25    when we did not.

1          THE COURT:  Okay.  So let's back up a step.  Okay.  So

2     first of all, we're talking about a June 2012 application to

3     the Hawaii Central Federal Credit Union; is that right?

4          DEFENDANT L. KEALOHA:  Yes.

5          THE COURT:  And that was for a second mortgage in the

6     amount of $150,000?

7          DEFENDANT L. KEALOHA:  Yes.

8          THE COURT:  Okay.  The factual basis talks about a

9     Form 1003.  Is that the credit union's standard form of some

10    sort?

11         MR. WHEAT:  Credit union standard loan application

12    form and he would have executed under penalty of perjury.

13         THE COURT:  Okay.  All right.  So, you understand that

14    Form 1003 that's being referenced to is the loan application

15    and you agree that you signed that loan application?

16         DEFENDANT L. KEALOHA:  Yes.

17         THE COURT:  And in that loan application did you --

18    well, did you fill that out or did your wife fill out the

19    application?

20         DEFENDANT L. KEALOHA:  She filled it out.

21         THE COURT:  Okay.  But you -- you signed it?

22         DEFENDANT L. KEALOHA:  Yes.

23         THE COURT:  Okay.  And you knew what was on the

24    application?

25         DEFENDANT L. KEALOHA:  Yes.

1              THE COURT:  Okay.  And was there something false

2       included in that application that you knew was false?

3              DEFENDANT L. KEALOHA:  Yes.

4              THE COURT:  And what was that?

5              DEFENDANT L. KEALOHA:  The rental agreement from the

6       swimming pool house that we received funds when indeed -- for

7       renting the pool house when indeed we did not.

8              THE COURT:  Okay.  So -- and we heard in the first

9       trial, right, that Bobby Nguyen and his then-wife were living

10      in the pool house, right?  Certain amount of testimony about

11      that.

12             DEFENDANT L. KEALOHA:  Yes.

13             THE COURT:  So they were in fact living in the pool

14      house; is that right?

15             DEFENDANT L. KEALOHA:  Yes.

16             THE COURT:  But they were not paying rent?

17             DEFENDANT L. KEALOHA:  Can I speak with him for a

18      second?

19             THE COURT:  Sure.  Yes.  Yes.  If you want you can go

20      over here, may be a little more private.

21                     (Pause in the proceedings.)

22             THE COURT:  Mr. Kealoha, if you need more time I'm

23      happy to leave the bench if you need it.

24             DEFENDANT L. KEALOHA:  I'm good, sir.  Thank you.

25             THE COURT:  Are you sure?

1           DEFENDANT L. KEALOHA:  Yes.

2           THE COURT:  Okay.  So can you answer my question?

3           DEFENDANT L. KEALOHA:  The -- they weren't paying

4     rent, but every now and then they would give us money to pay

5     for utilities and things like that.

6           THE COURT:  Okay.  So they were sort of covering

7     costs?

8           DEFENDANT L. KEALOHA:  Yes.

9           THE COURT:  But you weren't receiving $2700 a month?

10          DEFENDANT L. KEALOHA:  No.

11          THE COURT:  And you knew that?

12          DEFENDANT L. KEALOHA:  Yes.

13          THE COURT:  So did you know then that that loan

14    application Form 1003, did you know, first, that it stated that

15    you and your wife are receiving over 2700 per month in rental

16    income and, secondly, that that was a false claim?

17          DEFENDANT L. KEALOHA:  Yes.

18          THE COURT:  And you did that for the purpose of

19    increasing your chances of having your loan application

20    accepted?

21          DEFENDANT L. KEALOHA:  Yes.

22          THE COURT:  In other words, you were trying to make

23    yourself look like you had sufficient income from that source

24    in addition to your regular income from HPD and so forth to

25    qualify for the loan; is that --

```
 1                DEFENDANT L. KEALOHA:  Yes, sir.

 2                THE COURT:  Is that a fair statement?

 3                DEFENDANT L. KEALOHA:  Yes.

 4                THE COURT:  And you knew that was false?

 5                DEFENDANT L. KEALOHA:  Yes.

 6                THE COURT:  Okay.  And you don't dispute that the

 7      credit union at the time had its accounts insured by the

 8      National Credit Union Administration?

 9                DEFENDANT L. KEALOHA:  Yes.

10                THE COURT:  Do you agree with that?

11                DEFENDANT L. KEALOHA:  Yes, sir.

12                THE COURT:  Okay.  Do you also agree then that you and

13      your wife engaged in this activity together?

14                DEFENDANT L. KEALOHA:  Yes.

15                THE COURT:  Is that right?

16                DEFENDANT L. KEALOHA:  Yes.

17                THE COURT:  You knew the statement regarding the

18      rental income was false?

19                DEFENDANT L. KEALOHA:  Yes.

20                THE COURT:  You also agreed the statements were

21      material, that is they had a natural tendency to influence or

22      were capable of influencing the credit union to accept and

23      approve the loan application?

24                DEFENDANT L. KEALOHA:  Yes.

25                THE COURT:  And do you also agree you acted with the
```

1    intent to defraud?

2          DEFENDANT L. KEALOHA:  Yes.

3          THE COURT:  And that the financial institution was

4    federally insured?

5          DEFENDANT L. KEALOHA:  Yes.

6          THE COURT:  All right.  Are both counsel satisfied

7    with that factual basis?

8          MR. WHEAT:  United States is satisfied, Your Honor.

9    Thank you.

10          MR. BARBEE:  Yes, Your Honor.

11          THE COURT:  All right.  Is there anything else counsel

12    believes I should cover in either the plea agreement or the

13    sentencing agreement and appellate waiver?

14          MR. BARBEE:  Just on Page 13, Your Honor.

15          MR. WHEAT:  I was going to mention it.

16          THE COURT:  Okay.  Of what, Mr. Barbee?

17          MR. BARBEE:  The correction that the Court made this

18    morning that it's Page 13 of the sentencing agreement, that the

19    last line should refer to factual stipulations in Paragraph 2.

20          THE COURT:  Right.

21          MR. BARBEE:  And Mr. Kealoha and I both affixed our

22    initials.

23          THE COURT:  Right.

24          MR. WHEAT:  As did I.

25          THE COURT:  Okay.  So that was just a typo, correct?

1          MR. BARBEE:  Yes.

2          THE COURT:  To be clear.

3          MR. BARBEE:  Yes.

4          THE COURT:  Right?  Okay.  So you understand, as we

5   talked about this earlier, I think, Mr. Kealoha, that the

6   factual stipulation in Paragraph 2 of the sentencing agreement

7   and appellate waiver is the one in which you agree that ECF

8   docket 888, the final presentence report, the facts in that

9   report are true and accurate, right?

10          DEFENDANT L. KEALOHA:  Yes.

11          THE COURT:  Okay.  You understand you're admitting

12   that and those facts can be used against you in any future

13   proceeding if you breach either the plea agreement or the

14   sentencing agreement and waiver?

15          DEFENDANT L. KEALOHA:  Yes, sir.

16          THE COURT:  Okay.  Anything else then or is that it?

17          MR. WHEAT:  No, Your Honor.

18          MR. BARBEE:  No, Your Honor.

19          THE COURT:  All right.  Mr. Kealoha, as to Count 4 of

20   the third superseding indictment in Criminal Number 18-00068,

21   how do you plead, guilty or not guilty?

22          DEFENDANT L. KEALOHA:  Guilty.

23          THE COURT:  It is the finding of the Court that the

24   defendant is competent to understand the proceedings and to

25   enter a knowing and informed plea.  He understands the charge,

1   the plea is knowing and voluntary and not based on any force or
2   threat and is not based on any promise other than what is in
3   the plea agreement.  And the same is true for the sentencing
4   agreement and appellate waiver.

5          The plea of guilty is supported by an independent
6   basis in fact containing each essential element of the offense.
7   Mr. Kealoha understands his rights associated with a trial, the
8   sentencing guidelines, and the other sentencing factors and the
9   maximum possible punishment.  And as you have acknowledged that
10  you are in fact guilty, I accept your guilty plea and adjudge
11  you guilty of Count 4.

12         I will file the plea agreement, but as I said, reserve
13  a determination on accepting it until that presentence report
14  has been prepared.

15         So what I've done is, I talked to my probation office
16  over the lunch hour about -- thinking and then getting in touch
17  with you folks about what issues could be resolved in that
18  initial sentencing hearing.  Right?  What is it that should be
19  the subject of that.  And then I thought we'd get together on
20  October 31st when we're supposed to get together anyways.  We
21  can use that day since people have that on their calendars, at
22  least you two do.

23         MR. WHEAT:  Yes.

24         THE COURT:  And talk about that process then and the
25  timing.  Okay.  I'm hoping you folks will talk with each other

1    in the interim and try to reach an agreement as to what that

2    might look like.  Okay.  Obviously you should consult with

3    Probation on that as well.

4              MR. WHEAT:  We'll have a telephonic hearing next week?

5              THE COURT:  No, we'll just wait until the 31st.

6              MR. WHEAT:  The 31st.

7              THE COURT:  Is that next week?

8              MR. WHEAT:  No, it's the following week.  After next

9    week.

10             THE COURT:  No, no, the 31st is next Thursday.  So,

11   yeah, we'll meet next Thursday.

12             MR. WHEAT:  Okay.  Next Thursday.  You're right.  Time

13   flies when you're having fun.

14             THE COURT:  Right.  And you can appear by telephone,

15   Mr. Wheat.  But I do want parties to sort of think about this,

16   what -- I don't want individual issues necessarily resolved

17   when we all get together.  It's issues that cut across all four

18   defendants to be resolved.

19             And then to identify what those are and then talk

20   about briefing for those.  And that can be done before the

21   draft -- the new draft presentence report comes out, right?  It

22   seems to me.  Because everyone knows what those issues are

23   right now.

24             The big one being, obviously, which guideline applies.

25   And Mr. Wheat's taken the position, you know, the 2H can still

1   apply and the specific offense characteristics for that, and

2   the defense is saying no to that.  And that's really the big

3   one.

4          MR. BARBEE:  Yeah, that goes with all four defendants,

5   I think.

6          THE COURT:  That goes with all four defendants.  And

7   then if 2J applies, but not 2H, what does restitution look

8   like.  And that'll be another issue I suppose maybe that needs

9   to be addressed.  But if there are other issues that cut across

10  all four and you can think of those and we can try to get those

11  resolved, if they're appropriate for resolution at that stage.

12         MR. WHEAT:  Understood.

13         THE COURT:  All right?  Okay.  Bail status?

14         MR. BARBEE:  Your Honor, we'd request that conditions

15  of release presently in place remain in place.

16         MR. WHEAT:  No opposition.

17         THE COURT:  All right.  So I have talked to the

18  Pretrial Services officer.  I've been told that you've been in

19  compliance with your conditions of release, Mr. Kealoha.  So I

20  will permit you to stay out on bail under the current

21  conditions of release.

22         DEFENDANT L. KEALOHA:  Thank you, sir.

23         THE COURT:  I just remind you as always, make sure you

24  do comply.

25         DEFENDANT L. KEALOHA:  I will comply.

1                    THE COURT:  Okay.  All right.  Anything further then

2     to take up today?

3                    MR. WHEAT:  No, Your Honor.

4                    MR. BARBEE:  No, Your Honor.

5                    THE COURT:  All right.  Thank you all.  Court's in

6     recess.

7                    (The proceedings concluded at 3:13 p.m.,

8     October 22, 2019.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    COURT REPORTER'S CERTIFICATE

 2

 3           I, CYNTHIA FAZIO, Official Court Reporter, United

 4    States District Court, District of Hawaii, do hereby certify

 5    that pursuant to 28 U.S.C. §753 the foregoing pages is a

 6    complete, true, and correct transcript of the stenographically

 7    reported proceedings held in the above-entitled matter and that

 8    the transcript page format is in conformance with the

 9    regulations of the Judicial Conference of the United States.

10           DATED at Honolulu, Hawaii, December 12, 2019.

11

12

13                        /s/ Cynthia Fazio
                          CYNTHIA FAZIO, RMR, CRR, CRC
14

15

16

17

18

19

20

21

22

23

24

25
```